UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES PROSTROLLO, <br><br> Plaintiff, <br><br> VS. <br><br> SARA GARBE, in her official capacity as a supervisor for the SOUTH DAKOTA DEPARTMENT OF LABOR AND REGULATION, and GREG JOHNSON, in his official capcity as a supervisor for the SOUTH DAKOTA DEPARMENT OF LABOR AND REGULATION, and MARCIA HULTMAN, in her official Capacity as the Secretary of the SOUTH DAKOTA DEPARTMENT OF LABOR AND REGULATION, <br><br> Defendants. | Civ. No. 17-4052 <br><br> **FIRST AMENDED COMPLAINT** <br> (Jury Trial Demanded) |

COMES NOW James Prostrollo, and for his Complaint against Defendant South Dakota Department of Labor and Regulation, states and alleges as follows:

### JURISDICTION, VENUE AND PARTIES

1) This is an employment discrimination action arising under Title I of the Americans with Disabilities Act of 1990, and the ADA Amendments Act of 2008 ("ADAAA"), codified at 42 U.S.C.A. § 12102 *et seq.*

2) Plaintiff James Prostrollo ("Prostrollo") is an adult resident of Minnehaha County, South Dakota.

3) Defendant South Dakota Department of Labor and Regulation ("DLR") is a governmental agency of the State of South Dakota which is subject to the ADA and the ADAAA.

4) At all times relevant to this Complaint, Prostrollo was employed by the DLR in its Sioux Falls, South Dakota office as a Veteran's Representative.

5) At all times relevant, Sara Garbe served as Prostrollo's supervisor for the DLR in its Sioux Falls office.

6) At all times relevant, Greg Johnson served as Prostrollo's and Garbe's manager for the DLR in its Sioux Falls office.

7) At all times relevant, Marcia Hultman served as the Secretary for the DLR.

8) Prostrollo timely filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about October 7, 2015. On January 24, 2017 Prostrollo received a Notice of Suit Rights from the EEOC.

9) This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 42 U.S.C. § 2000e-5(f)(1) and (3) and 28 U.S.C. §§ 1331 and 1343(a)(4).

10) Venue is proper in accordance with 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

## GENERAL ALLEGATIONS

11) Prostrollo is a veteran and is rated as a disabled combat veteran under Veterans Administration ("VA") standards.

12) The DLR employed Prostrollo, Garbe and Johnson in its Sioux Falls office as a Veteran's Representative between April 1, 2013 and April 27, 2015.

13) As the

14) Johnson and Garbe were aware of Prostrollo's VA disability status.

15) Prostrollo performed his job duties in a manner that met his employer's expectations.

16) On April 23, 2015, Prostrollo requested two hours of sick leave in order to attend a physical therapy appointment relative to some lower back pain that Prostrollo was experiencing.

17) At that time he requested sick leave, Prostrollo also informed his supervisor, Sara Garbe, that his health care provider had scheduled 10 provisional physical therapy appointments for him in the event that he required additional therapy after the April 23 treatment. Prostrollo provided Garbe with the dates and times of the 10 provisional treatments, and requested that he be permitted to use 2 hours of sick leave from his sick leave bank on each of those dates in the event that his physical therapist determined that the additional treatments were necessary.

18) Prostrollo had sufficient sick leave available in his sick leave bank to cover all of the provisional physical therapy appointments.

19) After he made this request to Garbe on April 23, Garbe informed Prostrollo that she had talked with another DLR supervisor, Maureen Klaudt, about Prostrollo's health condition.

20) Prostrollo informed Garbe that he objected to her talking with co-workers about his health condition.

21) Garbe asserted that Prostrollo's health condition was a "serious" one and that he needed to request FLMA leave for the period covering the provisional physical therapy appointments.

22) Prostrollo explained to Garbe that the treatments scheduled were provisional as a means of assuring that he could get treatment if it was needed, and that he did not believe that back discomfort that might require additional physical therapy was a serious health condition that would qualify him for FMLA leave.

23) When Garbe continued to insisted that Prostrollo's health condition was serious and required him to request FMLA leave, Prostrollo contacted the DLR's Human Resources representative Susan Isaackson to ask about Garbe's categorization of his health condition.

24) When Garbe learned that Prostrollo had contacted the DLR's Human Resources representative, she refused to communicate with him for the rest of the day, including refusing to

3

address his pending sick leave request.

25) Prostrollo canceled the provision physical therapy appointments because he could not obtain his supervisor's approval unless he conceded that he had a serious health condition that required FLMA leave.

26) The following Monday, on April 27, Prostrollo again communicated with Ms. Isaakson, who then recommended that he should request an ergonomic assessment to see if there were accomodations that could be made to his workplace to ease his back pain. Prostrollo submitted a request for an ergonomic assessment to assess possible accommodations by email following his communication with Ms. Isaakson.

27) Shortly after his visit with Ms. Isaakson on April 27, Prostrollo was summoned to Garbe's office to meet with Garbe and her supervisor, Greg Johnson, regarding his request for sick leave for the provisional physical therapy treatments.

28) At the meeting, Johnson and Garbe reasserted that Prostrollo's health condition was serious and required FMLA leave instead of sick leave, and that he would not be permitted to use sick leave for provision physical therapy appointments.

29) When Prostrollo disputed that his physical condition was serious enough to qualify for FMLA leave, Johnson stood up and said that he accepted Prostrollo's resignation.

30) Prostrollo told Johnson and Garbe that he was not resigning, and Johnson then repeated that he was accepting Prostrollo's resignation. Johnson instructed Prostrollo to leave his office key on his desk on his way out.

31) At 4:40 pm on April 27, Johnson sent the DLR staff an email that intentionally misrepresented Prostrollo's termination as a resignation from employment.

32) Prostrollo did not resign, had no intention of resigning and had made a request to have an

4

ergonomic assessment about his workplace approximately one hour before he was terminated.

33) Prostrollo suffered adverse employment actions when he was disciplined and terminated by his supervisors at the the DLR.

34) Hultman is authorized to promulgate and enforce the policies and procedures applicable to DLR employees in terms of medical leave, FLMA leave and termination.

## COUNT I: VIOLATION OF TITLE I OF THE ADA AND ADAAA
### (Disability Discrimination in Employment)

35) The DLR is a covered employer as contemplated by 42 U.S.C. § 12111.

36) Prostrollo had a record of and was perceived by his supervisors as "disabled" as contemplated by 42 U.S.C. § 12102.

37) Johnson and Garbe each knew of Prostrollo's record of disability.

38) Prostrollo was able to perform the essential functions of his Veteran's Representative position.

39) Garbe shared information about Prostrollo's health condition with at least one co-worker without his permission to do so.

40) Garbe and Johnson had stereotyped perceptions about Prostrollo's health condition that lead them to conclude that Prostrollo had a serious health condition that required him to take extended leave from work.

41) Garbe and Johnson terminated Prostrollo because Prostrollo disputed their characterization of his health condition as a serious medical condition.

42) Johnson offered a pretextual reason for Prostrollo's termination by representing that Prostrollo resigned.

43) Prostrollo did not resign from employment and had no intention of resigning from employment.

44) As a direct and proximate result of his DLR supervisors' perceptions about his disability and his record of disability, Prostrollo was terminated from employment.

45) As a direct and proximate result of his DLR supervisors' perceptions about his disability and his record of disability, Prostrollo sustained lost income, lost employment-related benefits, a diminishment in future earning capacity, embarrassment, humiliation and mental anguish.

46) But for his DLR supervisors' discriminatory treatment, Prostrollo would have continued employment with the DLR.

47) The unlawful employment practices complained of in Count One were willful, reckless and malicious.

**REQUESTS FOR RELIEF**

Plaintiff James Prostrollo requests and prays for judgment against Defendants Sara Garbe, Greg Johnson and Marcia Hultman, in their official capacities as DLR supervisors, as follows:

1) For an award sufficient to compensate him for all special, general and punitive damages as allowed by the ADA and the ADAA, including front pay in lieu of reinstatement;

2) For his reasonable attorney fees, costs, disbursements and expenses incurred in the pursuit of this matter;

3) For a trial by jury; and

4) For such other and further relief as the Court may deem just and appropriate.

Dated this 10th day of May, 2017.

JOHNSON POCHOP & BARTLING

_____
Stephanie E. Pochop
405 Main Street | PO Box 149
Gregory, SD 57533
(605) 835-8391
Stephanie@rosebudlaw.com

*Attorney for Plaintiff James Prostrollo*